NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 28

Nos. 25-AP-223 & 25-AP-247

| | |
|---|---|
| Elizabeth Rossetti | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Bare, Ltd. and Jamie Spano | March Term, 2026 |

Samuel Hoar, Jr., J.

W. E. Whittington of Whittington Law Associates, PLLC, Hanover, New Hampshire, for
  Plaintiff-Appellant/Cross-Appellee.

Jake Evans of Barr Law Group, Stowe, for Defendants-Appellees/Cross-Appellants.

PRESENT: Reiber, C.J., Eaton, Waples, Nolan and Drescher, JJ.

¶ 1. **REIBER, C.J.** Plaintiff in this employment dispute appeals the trial court's decisions granting judgment as a matter of law to defendants, plaintiff's former employer and its president. Plaintiff's primary arguments on appeal are that the court erred in vacating the jury's determination that defendants underpaid her 2018 and 2019 bonuses, and that the court should have allowed the jury to consider her claim that defendants terminated her employment to avoid paying her 2020 bonus and unpaid vacation time. Defendants appeal the court's denial of their motion for attorney's fees. We affirm the judgment in favor of defendants and reverse and remand for the court to reconsider defendants' request for attorney's fees.

## I. Facts

¶ 2.    The following evidence was presented at trial.  Defendant Bare, Ltd. operates a medical spa in Burlington, Vermont; defendant Jamie Spano is Bare's president.  Plaintiff Elizabeth Rossetti was employed by Bare as its sole physician assistant from April 2015 to December 2020.  Plaintiff was initially hired to work part-time but became a full-time employee in 2018.

¶ 3.    The parties had a written employment agreement that was amended in August 2018.  The 2018 amendment stated that plaintiff's employment was "at will," she would be paid an annual salary of $115,000, and her patient hours would not exceed thirty-three scheduled hours per week.  Plaintiff was entitled to three weeks of paid vacation per calendar year, starting in January 2019.  The 2018 amendment also contained the following provision regarding bonuses:

> Employer shall provide Employee with potential "bonus" compensation as follows.
>
> a. If Employee is employed for the full calendar year of 2019, then Employer shall pay Employee an additional $10,000 in compensation for every $1,000,000 of the Employer's gross sales in 2019.  This amount shall not be prorated and none of this amount shall be due or payable if the Employee for any reason is not employed by Employer for the entire calendar year 2019.  By way of example, if the Employer's gross sales in 2019 are $1.5 million, and the Employee was employed for the entire calendar year of 2019, then the additional compensation due is $10,000.  By way of further example, if the Employer's gross sales in 2019 are $2.25 million, and the Employee was employed for the entire calendar year of 2019, then the additional compensation is $20,000.  Such additional compensation shall be paid not later than January 31, 2020.
>
> b. This arrangement shall continue in subsequent calendar years on [sic] same terms as above.
>
> c. With respect to calendar year 2018, however, if Employee is employed for the remainder of the calendar year of 2018, then Employer shall pay Employee an additional $5833.00 in compensation for every $1,000,000 of the Employer's gross sales in 2018. . . .

¶ 4. In 2018, plaintiff received a bonus of $5833. In 2019, she received a bonus of $20,000. Plaintiff's employment ended on December 4, 2020,[1] and plaintiff did not receive any bonus compensation for 2020. She claimed that she had 17.5 hours of unused paid time off (PTO) at the time her employment ended.

¶ 5. In February 2021, plaintiff filed this action against defendants. Her complaint, as subsequently amended, alleged that defendants breached her employment contract by underpaying her bonuses in 2018 and 2019 and failing to pay plaintiff her bonus and unused PTO for 2020. She sought damages under the contract and Vermont's wage statutes, 21 V.S.A. §§ 341-348, a declaration that the noncompete provision in her employment contract was void, and an accounting of Bare's sales from 2018 to 2020.

¶ 6. In January 2023, plaintiff moved for partial summary judgment. She sought a ruling that defendants fired her, that they violated the implied covenant of good faith and fair dealing by terminating her before she would have been paid her year-end bonus, and that the end-of-year bonus payments and uncompensated PTO constituted wages for purposes of the Vermont wage statutes. Defendants cross-moved for partial summary judgment, claiming that they did not violate the covenant of good faith and fair dealing and that plaintiff exhausted her allotted PTO in 2020.

¶ 7. The trial court concluded that the bonus payments could constitute wages under the terms of the contract if plaintiff was employed through the end of the year and the business made more than $1 million that year. It held that the 2020 "potential bonus" did not qualify as wages

_____

[1] Plaintiff asserts in her principal and reply briefs that she was terminated on December 14, 2020, pointing to a Department of Labor form filled out by defendant Spano. However, both plaintiff and Spano testified that plaintiff's last day was December 4, 2020, and plaintiff so argued in her motion for summary judgment. The discrepancy is not material to our analysis in this opinion.

3

because plaintiff had not worked to the end of 2020 and thus had not satisfied a required condition for payment. It determined that factual disputes precluded summary judgment on the other issues.[2]

¶ 8. Trial was conducted over two days in November 2024. Plaintiff's contractual claims were tried to a jury, and the wage claims were tried to the court. Prior to trial, the parties agreed to dismiss plaintiff's claim regarding the noncompete provision and her request for an accounting, as well as defendants' counterclaims for conversion and unjust enrichment. Plaintiff testified on her own behalf and presented testimony from defendant Spano and an expert in accounting.

¶ 9. After plaintiff finished presenting evidence, defendants moved for judgment as a matter of law on all claims. The court granted judgment to defendant Spano on plaintiff's wage claim because it found no evidence that Spano willfully violated her statutory obligation to pay wages to plaintiff, as required to hold Spano personally liable under 21 V.S.A. § 345. The court also granted defendants' motion for judgment as a matter of law on plaintiff's claims that defendant Bare breached the contract or the implied covenant of good faith and fair dealing by not paying her a bonus or unused PTO in 2020, concluding that the evidence was insufficient for the jury to find in her favor on these claims. Because plaintiff's contractual claims relating to 2020 failed, the court also granted judgment to Bare on any remaining claim for unpaid wages in 2020. The court denied judgment as a matter of law on plaintiff's remaining contractual and wage claims for underpaid bonuses in 2018 and 2019.

¶ 10. After the court issued its ruling, defendants presented testimony from Spano and their own expert in accounting. The case was then submitted to the jury, which found that defendant Bare breached its contractual obligation to pay a bonus to plaintiff in 2018 and 2019,

---

[2] The trial court noted in its decision that plaintiff had not separately alleged breach of the implied covenant of good faith and fair dealing in her amended complaint. Because the parties treated it as a separate claim in their filings, the court considered it accordingly.

4

causing $15,833 in damages. The court concluded that plaintiff was entitled to double damages under 21 V.S.A. § 347 and entered judgment against defendant Bare for $31,666.

¶ 11. Defendants filed a renewed motion for judgment as a matter of law, arguing that the evidence did not support a finding that Bare's gross sales for 2018 and 2019 were larger than Spano reported to plaintiff during her employment, and therefore did not support the jury's conclusion that defendants had underpaid plaintiff's bonuses for those years. The trial court denied the motion because defendants had not renewed their motion at the close of all evidence. Both parties filed notices of appeal to this Court; defendants also moved for reconsideration, arguing that Vermont Rule of Civil Procedure 50 in its current form did not require them to renew their motion at the close of trial to preserve it.[3] The trial court denied the motion as moot because the matter was on appeal. This Court subsequently granted defendants' request for a limited remand for the trial court to resolve their motion for reconsideration.

¶ 12. In June 2025, the trial court granted defendants' motion for reconsideration. The court concluded that it had erred in denying defendants' post-trial motion for judgment as a matter of law on the ground that defendants failed to renew the motion at the close of all evidence, because the modern rule no longer contained such a requirement. It held that defendants' mid-trial motion sufficiently preserved the issue they raised in their renewed motion. The court determined that plaintiff presented insufficient evidence to support her claims that Bare's 2018 and 2019 gross sales exceeded $2 million or $3 million, respectively. The court reasoned that the only evidence plaintiff presented on this point was from plaintiff's expert, whose calculation of gross sales was not based on the plain meaning of that term—as required by the contract—but instead on accounting principles, and was therefore not competent evidence. Because the remaining evidence

_____

[3] The two original appeals, 24-AP-373 and 25-AP-167, were dismissed after the trial court granted defendants' motion for reconsideration and for judgment as a matter of law.

5

was insufficient to support plaintiff's claims, the court entered judgment for defendants on all counts.

¶ 13.    Plaintiff appealed.  The trial court subsequently denied defendants' motion for attorney's fees, and defendants appealed from that decision.  We consolidated the appeals for purposes of briefing and argument.

## II.  Analysis

### A.    Plaintiff's Claim for 2018 and 2019 Bonuses

¶ 14.    Plaintiff first argues that the trial court erred in granting defendants' renewed motion for judgment as a matter of law as to the 2018 and 2019 bonuses because defendants did not previously seek judgment on the same ground.  Plaintiff further claims that even if defendants preserved their objection, the court erred in granting the motion because there was adequate evidence to support the jury's verdict.

¶ 15.    "We review a trial court's decision to grant or deny judgment as a matter of law de novo, applying the same standard as the trial court under Rule 50."  Driscoll v. Wright Cut & Clean, LLC, 2024 VT 49, ¶ 6, 219 Vt. 623, 325 A.3d 145 (quotation omitted).  "We consider the evidence in the light most favorable to the nonmoving party, excluding the effect of any modifying evidence."  Follo v. Florindo, 2009 VT 11, ¶ 26, 185 Vt. 390, 970 A.2d 1230.  A motion for judgment as a matter of law should be "granted only where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party."  Id. ¶ 27 (quotation omitted).

¶ 16.    Rule 50(a)(1) provides:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

6

A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. V.R.C.P. 50(a)(2). Rule 50(b) provides that a motion made during trial based on sufficiency of the evidence may be renewed by filing a post-judgment motion within twenty-eight days of judgment. "Because the post-judgment motion is merely a renewal of the pre-verdict motion, it can be granted only on grounds advanced in the prior motion." Reporter's Notes—2009 Amendment, V.R.C.P. 50; see Foti Fuels, Inc. v. Kurrle Corp., 2013 VT 111, ¶ 12, 195 Vt. 524, 90 A.3d 885 ("The grounds for the renewed motion are limited to those specifically raised in the prior motion." (quotation omitted)).

¶ 17. We conclude that defendants adequately preserved the ground for their renewed motion when they first moved for judgment as a matter of law at the close of plaintiff's evidence. Defendants moved for judgment on all of plaintiff's claims. As the trial court noted, when defense counsel began to argue why the various claims failed, "the court hijacked the argument." The court outlined the claims, and asked, "on Count 1, is there not sufficient evidence of breach of contract in [plaintiff's expert]'s testimony?" Defense counsel responded, "Your Honor, [plaintiff's expert] testified to the numbers. I think, under cross-examination, he acknowledged, not directly but indirectly, that he did not know how the total revenue line item was calculated, couldn't speak to that as far as the actual gross sales." The court asked, "Doesn't that evidence get the plaintiff to the jury on 2018 and 2019?" Plaintiff's counsel responded, "Yes, Your Honor." This exchange shows that the court and the parties understood that defendants claimed plaintiff's expert's testimony was insufficient to establish that plaintiff's bonuses were underpaid in 2018 and 2019. See State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994) ("To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it."); 9B C. Wright et al., Federal Practice and Procedure § 2533 (3d ed. 2026) (explaining that equivalent federal rule "does not require technical precision in stating the grounds of the motion," but does require grounds to be stated with sufficient

certainty to give fair notice to court and opposing party). The court subsequently observed that plaintiff's expert had a different interpretation of the meaning of "gross sales" than the ordinary meaning of "gross receipts," but concluded that "it is still a jury question whether the bonus was properly calculated based on gross receipts." This record demonstrates that defendants adequately raised this issue in their original motion such that the court understood it and was able to rule on it.

¶ 18.    As to the merits, the court did not err in granting defendants' renewed motion for judgment in their favor regarding the 2018 and 2019 bonuses. Plaintiff's claims were premised on the provision in the employment contract that entitled her to additional bonus payments "for every $1,000,000 of the Employer's gross sales" in 2018 and 2019. The contract did not define the term "gross sales." Where, as here, there was no evidence presented to show that the term was ambiguous, "the language must be given effect in accordance with its plain, ordinary and popular sense." Beldock v. VWSD, LLC, 2023 VT 35, ¶ 28, 218 Vt. 144, 307 A.3d 209 (quotation omitted). The term "gross" in the financial context means "consisting of an overall total exclusive of deductions," while "sales" is equivalent to "gross receipts." Gross, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/gross (last visited June 24, 2026); Sale, id. In turn, the ordinary meaning of "gross receipts" is "the total amount of value in money or other consideration received by a taxpayer in a given period for goods sold or services performed." Gross Receipts, id.

¶ 19.    Consistent with these definitions, the trial court instructed the jury that "gross sales" meant "gross receipts." Plaintiff did not object to that instruction. Plaintiff herself agreed that she understood "gross sales" to mean "the money that Bare received during the course of a calendar year; just the total money that they received."

¶ 20.    Plaintiff's expert, however, testified that he used the GAAP accrual method to reach his conclusion that Bare's gross sales exceeded $2 million in 2018 and $3 million in 2019.[4]  He based his conclusion on summary reports from the Vagaro software Bare used and added together anything that included the term "sale."  He did not review the underlying transaction details to make his calculations and did not confirm that the summary reports were based on the accrual method.  At no point did plaintiff's expert testify that Bare's gross receipts, meaning its actual total money received, exceeded $2 million in 2018 or $3 million in 2019.  Rather, he agreed that under his accounting definition of gross sales, "we're talking about gross sales, not revenue."

¶ 21.    Defendants presented testimony from their own expert, who testified that he calculated Bare's gross sales in 2018, 2019, and 2020 to be approximately the same as reported by Spano, with minor discrepancies.  Defendants' expert testified that he reviewed the detailed transaction reports underlying the summary reports in making his calculations.  He opined that plaintiff's expert had miscalculated gross sales because he failed to remove redemptions of gift cards and service packages from the total, effectively double counting those amounts.

¶ 22.    Because plaintiff's expert used a different definition of gross sales than the ordinary meaning called for by the contract, his testimony was insufficient as a matter of law to establish that Bare's gross sales exceeded $2 million in 2018 and $3 million in 2019.  Plaintiff presented no other evidence to support these larger figures.  Accordingly, the trial court properly granted judgment to defendants on those claims.  See Marshall v. Milton Water Corp., 128 Vt. 609, 612, 270 A.2d 162, 164 (1970) ("[T]he issue to be proved must be directly supported by some evidence, a burden not overcome by the introduction of facts generating only conjecture, surmise or suspicion.").

_____

[4]  "GAAP" means "generally accepted accounting principles."

B. Plaintiff's Claim for 2020 Bonus and PTO

¶ 23. Plaintiff next argues that the court erred in granting judgment to defendants on her claim that they breached the implied covenant of good faith and fair dealing by terminating her employment in December 2020 to avoid paying her 2020 bonus and unused PTO.

¶ 24. As a threshold matter, plaintiff appears to acknowledge that defendants did not breach the express terms of the employment contract by failing to pay plaintiff a bonus or PTO in 2020. The contract provided that plaintiff was entitled to a bonus of $10,000 for every $1,000,000 of Bare's gross sales if she was "employed for the full calendar year." Plaintiff was undisputedly not employed for the full calendar year in 2020 and therefore was not entitled to a bonus under this provision. As for PTO, the contract provided simply that plaintiff was "entitled to three weeks of paid vacation per calendar year starting January 1, 2019 on a 'use it or lose it' basis." The contract did not state that plaintiff was entitled to reimbursement for unused PTO if she left employment before the end of the calendar year, and plaintiff does not make such an argument on appeal. Instead, plaintiff's claim is that defendants breached the implied covenant of good faith and fair dealing by terminating her shortly before the end of the year, thus depriving her of her "otherwise earned bonus and PTO."

¶ 25. In LoPresti v. Rutland Regional Health Services, Inc., this Court held that the implied covenant of good faith and fair dealing "does not apply to at-will employment agreements when the plaintiff's argument amounts to no more than an objection to the other party's freedom to avail itself of the at-will arrangement by terminating the agreement for reasons that the other party does not accept." 2004 VT 105, ¶ 39, 177 Vt. 316, 865 A.2d 1102. We noted, however, that our ruling would "not necessarily preclude the covenant's application in the employment termination context when a plaintiff's claim for damages is based on 'accrued benefits' and not solely on implied tenure, i.e., permanent employment until just cause for termination arises." Id. ¶ 42. We cited out-of-state cases holding employers liable for breaching the covenant when the

employer terminated the employee to avoid paying benefits earned under the contract. Id.; see, e.g., Fortune v. Nat'l Cash Reg. Co., 364 N.E.2d 1251, 1258 (Mass. 1977) (holding that jury could find employer acted in bad faith in terminating salesman to avoid paying bonus and commission owed for sale of cash registers to large chain of department stores). In Boynton v. ClearChoiceMD, MSO, LLC, we again noted this potential avenue for relief but declined to adopt it in that case because the facts did not support such a claim. 2019 VT 49, ¶ 6 n.4, 210 Vt. 454, 216 A.3d 1243 (noting that in LoPresti, we "looked favorably on out-of-state cases holding that a claim under the covenant of good faith and fair dealing can be cognizable where an employer terminates an at-will employee to avoid paying a commission that will soon be contractually owed").

¶ 26.   Plaintiff urges us to recognize a cause of action for breach of the implied covenant based on accrued benefits under an at-will contract and hold that she established such a claim here. We need not decide whether Vermont law recognizes such a claim because even if it did, the evidence did not support plaintiff's assertion that defendants terminated her out of a desire to avoid paying the 2020 bonus or unused PTO, as would be required for her to prevail.

¶ 27.   Plaintiff argues that the jury could infer such intent from evidence that defendants had underpaid her bonuses the past two years, demonstrating a motive to avoid paying her 2020 bonus; Spano withheld sales reports; plaintiff had never been disciplined and had recently been promoted and given a raise; she was terminated for a "trivial" reason; and her termination occurred just before the end of the year. We disagree that this evidence was sufficient for the jury to infer that defendants acted in bad faith. As described above, plaintiff failed to prove that she was underpaid in 2018 and 2019. Her allegation that Spano withheld the underlying transaction documents has little to no probative value because she did not demonstrate that the documents would have shown that she was underpaid. The facts that plaintiff had not been disciplined in the past, and had recently been promoted and given a raise, likewise do not create a reasonable inference of bad faith given employer's legitimate explanation for why plaintiff's employment

11

ended. The parties disputed whether plaintiff quit or was fired, but they agreed that it occurred during a disagreement regarding defendants' request for plaintiff to work on a Saturday. Discussions about the business opening on Saturdays, and the need for staff to work Saturdays, began in October 2020. Plaintiff learned several weeks in advance that she was expected to work on Saturday, December 5. On December 4, she told Spano she was unwilling to do so, leading to her quitting or being fired that day. While plaintiff characterizes the dispute as "trivial," the record makes clear that there was a genuine disagreement regarding the Saturday shift.[5]

¶ 28. That leaves the timing of the termination as the sole basis to infer bad faith. Plaintiff correctly points out that in the employment discrimination context, we have held that close temporal proximity between an employee's complaints of discrimination to their employer's human resources department and their termination was sufficient to present a prima facie case of retaliation.[6] Hammond v. Univ. of Vt. Med. Ctr., 2023 VT 31, ¶ 40, 218 Vt. 250, 308 A.3d 421. However, where the employer demonstrated a legitimate nondiscriminatory reason for the termination—in Hammond, the employee's performance issues—temporal proximity alone was insufficient to prove that the reason was pretextual. Id. ¶¶ 41-42; see El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation . . . , but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."), abrogated on other grounds by, Univ. of Tex. Sw. Med. Ctr. v. Nassar,

---

[5] Plaintiff also asserts that the reason for termination offered by defendants is not valid because she was being asked to work hours exceeding what was permitted by the contract. However, she acknowledged at trial that "because I had taken a PTO day off that week, it was not going to put me over . . . my thirty-three hours."

[6] Plaintiff argues generally that we should not apply the McDonnell Douglas burden shifting framework used in discrimination cases to assess a claim of violation of the covenant based on accrued benefits. We need not decide the appropriate analysis for such a claim, because as described above, even if Vermont recognizes such a claim, plaintiff failed to provide evidence that would allow a reasonable jury to conclude that employer acted in bad faith here.

570 U.S. 338 (2013); Adams v. Green Mountain R.R., 2004 VT 75, ¶ 9, 177 Vt. 521, 862 A.2d 233 (mem.) ("There must be some evidence other than chronology that gives the factfinder reason to believe that the timing is an indication of improper motive."). Absent some other evidence, the timing of plaintiff's termination was an insufficient basis for the jury to infer that defendants were motivated by a desire to deprive plaintiff of her year-end bonus and PTO.

¶ 29. Plaintiff urges us to adopt the approach of the Idaho Supreme Court, which has held that "any action by either party which violates, nullifies or significantly impairs any benefit of the employment contract is a violation of the implied-in-law covenant of good faith and fair dealing." Metcalf v. Intermountain Gas Co., 778 P.2d 744, 750 (Idaho 1989), modified by, Sorensen v. Comm Tek, Inc., 799 P.2d 70, 76 (Idaho 1990) (reaffirming Metcalf "except as to . . . making the decision prospective only"). Under the Idaho approach, the employer's intent is irrelevant to a claim of bad faith.[7]

¶ 30. Assuming we were to recognize a claim for violation of the covenant based on denial of accrued benefits, we would not adopt the approach of Metcalf, because it is inconsistent with Vermont law governing the implied covenant of good faith and fair dealing. " '[G]ood faith' is a concept that 'varies . . . with the context' in which it is deemed an implied obligation." Carmichael v. Adirondack Bottled Gas Corp. of Vt., 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993) (quoting Restatement (Second) of Conts. § 205 cmt. a (1981)). " '[A] complete catalogue of types

---

[7] Many jurisdictions have refused altogether to imply a duty of good faith and fair dealing in at-will employment contracts, regardless of the factual circumstances. See, e.g., Pittman v. Larson Distrib. Co., 724 P.2d 1379, 1385 (Colo. App. 1986); Parnar v. Americana Hotels, Inc., 652 P.2d 625, 629 (Haw. 1982); Morriss v. Coleman Co., 738 P.2d 841, 851 (Kan. 1987); Cothern v. Vickers, Inc., 99-CA-001990-SCT (¶ 16) (Miss. 2000), 759 So. 2d 1241; Melnick v. State Farm Mut. Auto. Ins. Co., 1988-NMCA-012, ¶ 17, 749 P.2d 1105; Hinson v. Cameron, 1987 OK 49, ¶ 13, 742 P.2d 549; Thompson v. St. Regis Paper Co., 685 P.2d 1081, 1086 (Wash. 1984); Miller v. Mass. Mut. Life Ins. Co., 455 S.E.2d 799, 803 (W. Va. 1995); Brockmeyer v. Dun & Bradstreet, 335 N.W.2d 834, 838 (Wis. 1983). Of the jurisdictions that have recognized the covenant in at-will employment contracts, Metcalf appears to be an outlier in its holding that the employer's intent is irrelevant. See 778 P.2d at 750 ("We recognize that our decision today is a departure from long established principles of contract law.").

of bad faith is impossible,' " but courts have recognized the following types: " 'evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.' " Id. at 209, 635 A.2d at 1217 (quoting Restatement (Second) of Conts. § 205 cmt. d (1981)). As this list makes clear, a showing of bad faith typically requires intent to interfere with the contract or at least an unreasonable failure to hold up one's end of the bargain. For this reason, we conclude that in the context of the type of claim raised by plaintiff, a determination of bad faith would necessarily require an examination of the employer's conduct, not merely its effect on the employee. To hold otherwise would be to eviscerate the at-will employment relationship, as termination without cause could nearly always be described as impairing a benefit of the contract.

¶ 31. Further, as we explained in LoPresti, most jurisdictions adopting the accrued-benefits doctrine have held that the covenant may be violated "where the termination was based on the employer's desire to avoid paying the employee benefits earned under the contract." LoPresti, 2004 VT 105, ¶ 42 (citing cases); see also Mitford v. de Lasala, 666 P.2d 1000, 1007 (Alaska 1983) (holding that implied covenant of good faith and fair dealing "would prohibit firing [at-will employee] for the purpose of preventing him from sharing in future profits"); Wagenseller v. Scottsdale Mem'l Hosp., 710 P.2d 1025, 1040 (Ariz. 1985) (holding that "[t]he covenant does protect an employee from a discharge based on an employer's desire to avoid the payment of benefits already earned by the employee"); Geysen v. Securitas Sec. Servs. USA, Inc., 142 A.3d 227, 241 (Conn. 2016) (recognizing "availability of a breach of the implied covenant of good faith and fair dealing contract claim when the termination of an employee was done with the intent to avoid the payment of commissions"); Fortune, 364 N.E.2d at 1258 (holding that employer breaches covenant when it dismisses at-will employee to deprive him of compensation earned and expected for services already rendered). Thus, these courts view the employer's intent as relevant to the analysis of a claim of bad faith. Here, plaintiff failed to put forth any evidence beyond the

14

timing of the decision that would give rise to a reasonable inference that Bare acted out of an intent to deprive her of her bonus or PTO. The trial court therefore did not err in granting judgment as a matter of law to defendants.

### C. Plaintiff's Wage Claim Against Spano

¶ 32. Next, plaintiff contends that the court erred in granting judgment as a matter of law on her claim that Spano, as president of Bare, violated 21 V.S.A. § 345(a) by willfully failing to pay plaintiff her 2020 bonus. This issue was tried to the court, rather than the jury; accordingly, we will uphold the court's findings unless clearly erroneous and will affirm its conclusions if supported by the findings. Abbiati v. Buttura & Sons, Inc., 161 Vt. 314, 318, 639 A.2d 988, 990 (1994).

¶ 33. Section 345(a) provides that in a wage action against a corporation, "the president or other officers who have control of the payment operations of the corporation shall be considered employers and liable to the employee for actual wages due when the officer has willfully and without good cause participated in knowing violations of this subchapter." 21 V.S.A. § 345(a). Plaintiff alleged that defendants' failure to pay her a bonus for 2020 violated 21 V.S.A. § 342(a)(1), which requires an employer to "pay each week, in lawful money or checks, the wages earned by each employee to a day not more than six days prior to the date of payment," and that Spano willfully participated in this violation.

¶ 34. We see no error in the court's judgment on this claim. Under the express terms of the contract, plaintiff was not owed a bonus for 2020 because she did not work the entire calendar year. Thus, plaintiff's claim against Spano for unpaid wages in the form of a 2020 bonus necessarily fails because the event that triggered payment of the wages never occurred. Cf. Tanzer v. MyWebGrocer, Inc., 2018 VT 124, ¶ 50, 209 Vt. 244, 203 A.3d 1186 (holding that under employment agreement, payout of phantom shares depended on specific triggering event that had occurred, and therefore phantom shares were "wages" within meaning of Vermont's wage

15

statutes). To the extent plaintiff claims that Spano violated § 345 by failing to compensate her for unused 2020 PTO, plaintiff cites no authority to demonstrate that unused PTO qualifies as "wages" under the statute, or that she was entitled to be paid for time she did not use. We therefore affirm the court's judgment on this claim.

### D. Plaintiff's Claims for Punitive Damages, Interest, and Attorney's Fees

¶ 35. Plaintiff argues that, if we reverse the judgment in favor of defendants, we should hold that the trial court improperly struck her claim for punitive damages and erred in refusing to award interest and discounting her attorney's fees by fifty percent. Because we affirm the court's judgment as a matter of law in favor of defendants, these claims are moot and we do not address plaintiff's arguments.

### E. Defendants' Claim for Attorney's Fees

¶ 36. Finally, defendants argue that the court erred in denying their request for attorney's fees. Defendants contend that the employment contract entitled them to reimbursement of the fees they incurred in successfully defending against plaintiff's claim that they breached the covenant of good faith and fair dealing by not paying her 2020 bonus and unused PTO. We agree that the trial court erred in concluding that the contractual fee-shifting provision was unenforceable for that claim and therefore reverse and remand for the court to consider defendants' request.

¶ 37. After trial, both parties moved for an award of attorney's fees. Plaintiff sought attorney's fees under 21 V.S.A. § 347, which states that "[a]n employer who violates section 342 or 343 of this title shall forfeit to the individual injured twice the value thereof, to be recovered in a civil action, and all costs and reasonable attorney's fees." Defendants sought attorney's fees under the employment contract, which stated that the substantially prevailing party in a dispute relating to the subject matter of the contract "shall be entitled to reimbursement from the substantially non-prevailing party" of legal fees, costs, and expenses.

16

¶ 38. The court granted plaintiff's motion in part and denied defendants' motion. The court awarded plaintiff fifty percent of her claimed fees for prevailing on the 2018 and 2019 claims. It reasoned that because she was unsuccessful on her claim for the 2020 bonus and PTO, which was "wholly distinct, both factually and legally" from her other claims, she was not entitled to recover fees for hours spent on the 2020 claim. The court agreed that defendants substantially prevailed in the litigation as a whole and found the amount of fees they claimed—approximately double the amount plaintiff claimed—to be reasonable. However, the court concluded that assessing those fees against plaintiff would be contrary to public policy because it would effectively deprive her both of her statutory fee award and her damages award and statutory penalty. It therefore denied defendants' request for attorney's fees.

¶ 39. After the trial court granted defendants' Rule 50 motion and entered judgment in their favor on the 2018 and 2019 claims, defendants again moved for attorney's fees. Defendants contended that plaintiff's wage claims were brought in bad faith because, contrary to her legal position, she testified that she knew gross sales meant actual revenue. Defendants further contended that even if public policy precluded recovery of their fees incurred in defending the 2018 and 2019 wage claims, the court previously found that plaintiff's claim regarding unpaid bonuses and PTO for 2020 did not overlap with her 2018 and 2019 claims. Thus, they argued, they were entitled to recover attorney's fees for defending the 2020 claim.

¶ 40. The court denied defendants' motion, reasoning that it had already determined as a matter of law that the contractual attorney's fees provision was unenforceable because it conflicted with 21 V.S.A. § 347. The court found that plaintiff's claims were not brought in bad faith. It further reasoned that "the statutory and contractual claims asserted here were fully overlapping; without a finding in her favor on one or more of her contractual claims, plaintiff could have no recovery on her statutory claims."

¶ 41. In deciding that defendants were barred from recovering fees under the contract, the trial court relied on a decision by the California Court of Appeal, Dane-Elec Corp., USA v. Bodokh, 248 Cal. Rptr. 3d 163, 172 (Ct. App. 2019). In Dane-Elec Corp., an employer sued an employee for breach of a promissory note, and the employee counterclaimed for nonpayment of wages. The employer prevailed on both counts. The trial court granted the employer's request for attorney's fees under the promissory note, which provided that the substantially prevailing party could recover fees, but it denied fees incurred in defending the statutory wage claim because the employee had not brought that claim in bad faith. The California appellate court reversed in part, concluding that the employer was not entitled to attorney's fees incurred for defending the employee's wage claim to the extent it was "inextricably intertwined with fees [on] the breach of contract claim." Id. The court reasoned that such an award was barred by California's wage statute, which provided that the prevailing party in an action for nonpayment of wages is entitled to attorney's fees, but that if the prevailing party "is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith." Id. at 170 (quoting Cal. Labor Code § 218.5(a)). The court explained that the latter provision expressed a legislative policy decision that prevailing defendants should not receive attorney's fees in wage actions to avoid chilling potentially valid claims by employees. Id. at 171. It therefore concluded:

> unless the trial court finds the wage claim was brought in bad faith, [§ 218.5(a)] prohibits, as a matter of law, an award of attorney fees to a nonemployee prevailing party for successfully defending a wage claim that is inextricably intertwined with a claim subject to a contractual prevailing party attorney fees provision.

Id. at 164-65. The court upheld the award to the employer of fees incurred solely in enforcing the promissory note. Id. at 174.

¶ 42. Defendants appear to agree that, like the California wage statute, the unilateral fee-shifting provision in 21 V.S.A § 347 is intended to ensure that only prevailing plaintiffs receive

18

fees in wage actions, and thus prevents defendants from recovering fees for defending plaintiff's 2018 and 2019 wage claims even though they were the substantially prevailing parties on those claims. Defendants argue, however, that § 347 did not bar them from recovering fees for defending the 2020 implied covenant claim, because that claim involved a separate legal theory and separate proof from the wage claims. We agree.

¶ 43. In Vermont, parties are required "to bear their own costs of litigation unless otherwise provided by contract or statute." L'Esperance v. Benware, 2003 VT 43, ¶ 21, 175 Vt. 292, 830 A.2d 675. "An award of attorney's fees is proper where a contract makes such provisions." Foster & Gridley v. Winner, 169 Vt. 621, 624, 740 A.2d 1283, 1287 (1999) (mem.). "When a contract provides for attorney's fees, Vermont courts are loathe to revise the agreement struck by the parties and deny them the benefit of their bargain." Fletcher Hill, Inc. v. Crosbie, 2005 VT 1, ¶ 5, 178 Vt. 77, 872 A.2d 292.

¶ 44. As to the 2018 and 2019 bonuses, plaintiff claimed that defendants miscalculated or underreported their gross sales, depriving her of bonus compensation owed under the contract, and by extension, the wage statute. Her 2020 claim, as litigated below and on appeal, involved a different legal theory—breach of the implied covenant of good faith and fair dealing—and different proof than the 2018 and 2019 claims.[8] In her 2020 claim, plaintiff contended that defendants acted in bad faith by terminating her weeks before she would have fulfilled the

---

[8] Plaintiff initially asserted in this case that the 2020 "potential bonus" constituted wages. However, the trial court rejected this argument in its April 2023 summary judgment decision, holding that under the plain terms of the contract, the year-end bonus payment would constitute wages only if plaintiff was employed through the end of the year and the business made more than $1 million that year. Because plaintiff was not employed through the end of 2020, the "potential bonus" did not constitute wages for purposes of the statute. Plaintiff did not challenge this ruling on appeal and subsequently litigated the case in accordance with the trial court's ruling by focusing solely on her implied-covenant theory. See In re Hart, 167 Vt. 630, 631, 715 A.2d 640, 641 (1998) (mem.) ("Under the usual principles of law, issues not challenged on appeal are deemed waived." (quotation and citation omitted)).

contractual condition of being employed for the entire calendar year in order to deprive her of her 2020 bonus. Because this was not a claim for wages owed within the meaning of 21 V.S.A. § 341, the purposes of the wage statute are not offended by enforcement of the contractual attorney's fees provision as to this claim. See Tanzer, 2018 VT 124, ¶ 48 ("Vermont's wage statutes are directed at ensuring that workers are paid in a timely manner. . . . [T]he statutes govern an employer's duty to pay an employee wages that are actually due . . . ." (quotation, citation, and alteration omitted) (emphasis added)). Nor were the facts and law of plaintiff's 2020 claim "inextricably intertwined" with the wage claims such that, as a matter of law, § 347 should prohibit attorney's fees from being awarded to defendants on that claim. Dane-Elec Corp., 248 Cal. Rptr. 3d at 172; cf. id. at 174 (upholding award of contractual attorney's fees to employer on separate claim for breach of promissory note). Thus, assuming defendants can establish which fees they incurred exclusively in defending the nonwage claims, they are theoretically entitled to recovery under the contract as the substantially prevailing parties.[9] We therefore reverse the trial court's June 30, 2025 order, and remand for reconsideration of defendants' request for attorney's fees.

The judgment in favor of defendants is affirmed. The trial court's June 30, 2025 order denying defendants' request for attorney's fees is reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Chief Justice

---

[9] Our holding that defendants' request for fees for defending against the 2020 claim is not barred as a matter of law does not alter the trial court's discretion to determine a reasonable fee using the approach set forth in our prior case law. See, e.g., L'Esperance, 2003 VT 43, ¶ 22 (discussing approved method for calculating attorney's fees).